**In re Anonymous No. 51 D.B. 77**

## HEARING COMMITTEE REPORT

UNKOVIC, *Chairman*, November 3, 1978—

### STATEMENT OF CASE

On March 22, 1978, and April 20, 1978, the hearing committee heard testimony on seven separate charges against respondent, [ ] of [ ] county.

### SUMMARY OF THE CASE

This case was initiated by the Office of the Disciplinary Counsel against [Respondent], a practicing attorney maintaining offices in [ ], [ ] County, Pa. The petition for discipline contains charges that respondent had violated various disciplinary rules in connection with his representation of the estate of [A] while acting as the attorney for said estate,

between the period of April 11, 1975, and up to the time that the petition was filed.

The principal conduct complained of was that respondent had hired and caused fees to be paid to an attorney without the knowledge and consent of the executor and was therefore engaged in improper fee sharing; had permitted the other attorney to take sole possession and control of the estate funds and knew or should have known that said attorney was commingling said funds with other funds and permitted the total funds in the account to fall below the amount necessary to satisfy the owners of said funds; was generally negligent in the handling of estate matters, and failed to provide the executor with a full and proper account of his handling of the estate. The petition alleged a violation of seven disciplinary rules.

Respondent has admitted that his conduct in representing the estate was in violation of D.R. 6-101(A)(3) involving neglect, and that his conduct was in violation of D.R. 9-102(B)(3) in failing to provide a full and proper account to the estate.

Petitioner has not asked for a finding that respondent violated D.R. 1-102(A)(6) dealing with conduct adversely reflecting upon his fitness to practice law, nor is petitioner asking for finding regarding D.R. 9-102(B)(4) dealing with the failure to make prompt payment or delivery of funds to the client.

The only contested issues remaining are whether respondent's conduct was in violation of the following three disciplinary rules: D.R. 1-102(A)(4), dealing with dishonesty, fraud, deceit, and misrepresentation, and your hearing committee finds that respondent did not violate this rule; D.R. 2-107(A), dealing with an improper division of legal fees

without consent or full disclosure and your committee finds that petitioner did not carry its burden of proof concerning this charge; D.R. 9-102(A), dealing with the preservation of the identity of the client's funds and your committee finds that respondent did violate this rule.

Based on the foregoing, your hearing committee recommends that respondent be subjected to a private reprimand by the disciplinary board pursuant to Pa.R.D.E. 204(5).

## FINDINGS OF FACT

1. [A] died, testate, a resident of [   ] county, survived by eight children.

2. Decedent's will was admitted to probate by the register of wills of [   ] county in April of 1975, and letters testamentary granted thereon to a son, [B], named in the will with whom decedent resided.

3. Respondent at the time undertook to represent the estate and its personal representative.

4. Respondent as the attorney for the estate caused an inventory of decedent's assets to be filed on or about December 11, 1975. There were: (a) balance in three savings accounts totaling $20,946.56; (b) two United States (Series E) Savings Bonds valued at $452; and (c) parcel of real estate, upon which decedent's home was situated, valued at $9,500.

5. The will of decedent provided for an equal division of the personal assets among six children and a devise of a life interest to the son, [B], with the remainder estate passing to seven children and their heirs.

6. On or about April 14, 1975, respondent opened a checking account with the [C] National Bank, said account carrying the listing of "Attorney [Respondent], Executor for the Estate of [A]."

7.  Said checking account had an initial deposit of $20,946.56, the aggregate of the three savings accounts.

8.  Between April and December 1975, respondent made payments of debts of decedent and estate as well as administration costs of the estate.

9.  One, [D], an attorney duly admitted to practice before the Supreme Court of Pennsylvania and employed as a trust officer by the [C] National Bank became associated with respondent in the handling and settlement of this estate.

10.  Such association was contrary to [D's] employment with the [C] National Bank.

11.  Prior to [D] having rendered any service and as of September 1975, he received his final payment for services, which were for managing and taking care of the bank account and preparing the inventory and accounts. Such payment was for $1,500.

12.  Within a relative short period of time after respondent undertook to represent the estate, and more accurately by April 17, 1975, he received his total fee of $1,150. Said payment was not made with any authorization given by the executor.

13.  In September 1975, without permission or authority granted by executor, respondent drew a check in the amount of $14,000 on the estate checking account and opened up a savings account at the [E] Savings and Loan Association under the name and style of "Estate of [A], Dec'd., [D] or [Respondent]—Attorney for."

14.  By November 13, 1975, this savings account earned accrued interest in the amount of $90.76 and the total sum of $14,090.76, the assets of the [A] estate, were withdrawn and deposited with the [C] National Bank in an account identified as "[D], Escrow Agent, (#12-69132)." Only [D] had control

of this account and respondent had no signatory power and could not draw checks upon it.

15. The funds of the estate of [A] were commingled by [D] with other funds entrusted to respondent in regard to an estate identified as "[F]" estate.

16. Respondent, after learning that the funds of the estate of [A] were in the escrow account of [D] made no effort to regain control of them and to reestablish a separate estate account over which the executor or he had control. This indifference and failure to act as counsel for the estate continued from May of 1976.

17. At no time did the executor have any knowledge of the manner and method adopted by his counsel in handling the estate funds.

18. The estate funds commingled with other funds in the "[D] Escrow Account" fell short of the amount necessary to honor obligations of the [A] estate and to make distribution to those entitled to receive a share as provided in the will.

19. Moneys belonging to the [A] estate and to the estate of [G], as well as moneys received by [D] to pay obligations of [D] personally and of companies in which he had an interest were used and appropriated without any record being made or specific notation or accounting.

20. Respondent made partial distribution to the named legatees on two occasions after being pressured and at the time made several promises to file a final accounting. No such final accounting has been made.

21. Glaring inaccuracies appear in the debts and deductions statement filed in December 1976, such as:

(a) [D] being paid $600 for accounting fees, whereas he actually received $1,150.

(b) Respondent's fees listed as $1,750, when in fact he received $1,500.

(c) No claim for family exemption to which executor was entitled since decedent was a member of respondent's family.

(d) Signature appearing on the document was that of respondent and not that of the fiduciary.

22. Respondent forwarded first and final account disclosing:

(a) [D] did receive $950 for "Accounting," when in fact he received $1,150.

(b) A family exemption credit was spelled out for the fiduciary in the sum of $1,000, when in fact the allowance of such was $2,000 at the time of the death of decedent.

23. All documents were prepared by [D] and left in the office of respondent with his secretary and signed by him without ascertaining the accuracy and truthfulness thereof.

24. Respondent has not made demand of [D] as of the date of the hearings before the committee for a final accounting of estate funds and repayment thereof so that a final report and accounting could be made to the heirs of [A].

25. Respondent, [ ], delegated his obligations and duties as attorney for the estate to [D], a member of the [E] County Bar and the trust officer of the First National Bank of [C], Pennsylvania, without advising the executor of the extent of such delegation and thereafter failed to act and perform any of the duties devolving upon him as the representative of a fiduciary.

## DISCUSSION

The petition for discipline filed by the office of the disciplinary counsel for District [ ] alleged that

respondent had violated seven disciplinary rules during the course of his representation of the executor and heirs of the estate of [A]. In its brief filed with the hearing committee, petitioner has asked for a finding that respondent is guilty of five of the original seven charges. Petitioner has not asked for a finding that respondent violated D.R. 1-102(A)(6), relating to conduct which would adversely reflect upon his fitness to practice law, nor has a request been made to find respondent in violation of D.R. 9-102(B)(4), dealing with the failure to make prompt payment to the client of funds which are in the possession of respondent.

On the other hand, respondent has admitted that his conduct was in violation of two of the five charges being pressed by petitioner, to wit; D.R. 6-101(A)(3), dealing with neglect of a legal matter, and D.R. 9-102(B)(3), dealing with the failure to deposit funds belonging to the client in an identifiable bank account.

This discussion therefore will concern only the three remaining charges which remain in issue.

The first charge concerns D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation. The principal thrust of this charge is that respondent along with [D], another member of the [E] County Bar who had been hired by respondent to assist in the handling of the estate, removed funds from the estate account without the knowledge of the executor and placed said funds in an interest-bearing account in the [E] Federal Savings and Loan Association and that the only authorized signers on said account were respondent and [D].

Your hearing committee believes that investing the money as described without the consent of the

executor was improper. However, it is not felt that the mere investment of idle money in a properly insured interest-bearing account is in itself reprehensible. Had respondent discussed the investment with the executor and received his consent, there could be no question raised as to the propriety of opening the account. Therefore, the sole basis of a finding that respondent violated D.R. 1-102(A)(4) would have to be his failure to seek and obtain the consent of the executor. It is not felt that the failure to have done so is such conduct as could be described as dishonest, fraudulent, deceitful or involving misrepresentation. Such conduct as described in that rule would require a finding of intentional conduct on the part of respondent engaged in for the purpose of his or another's benefit to the detriment of the client. This did not occur, nor does your hearing committee believe that such a result was even intended. In view of the foregoing, your hearing committee has made a finding that respondent's conduct in placing the estate assets in the savings account did not violate D.R. 1-102(A)(4).

The second charge which is being disputed is that respondent violated D.R. 2-107(A), concerning an improper division of fees among lawyers. It should be noted at the outset that the bulk of the problems facing respondent as a result of his handling of the [A] estate results from his having associated himself with [D], a member of the [   ] County Bar and a trust officer at [C] Bank. For reasons which are not clear, although an unsubstantiated illness has been suggested, respondent almost totally delegated his responsibility to represent the estate to [D]. It was [D] who removed the funds from the [F] Federal Savings and Loan account and placed

them in an account under his sole control wherein the funds were then commingled. It was [D] who wrote checks from this account and handled personal matters of his own out of this account. It was [D] who prepared certain estate documents for filing which were incorrect particularly with reference to fees he had received and the fees that respondent had received. In retrospect, it seems very fortunate that the estate did not suffer a significant and financial loss as a result of [D's] conduct and respondent's failure to assert control of the estate. However, in order to find respondent guilty of a violation of D.R. 2-107(A), it would be necessary to find (a) that he divided his fee for legal services without the client's consent to [D's] employment and without a full disclosure that the fees would be divided, and/or (b) the division of the fee was not in proportion to the services rendered by each and/or (c) that the total fees charged exceeded a reasonable legal fee for all services rendered to the client. These will be discussed in reverse order: D.R. 2-107(A)(1), (2), (3).

There has been no claim made or any proof introduced that the total fees paid to [D] and to respondent exceeded the total fees which would be normally charged for the legal services which were performed. Your hearing committee, therefore, has no evidence on which to base a finding that the total fees charged the estate were other than reasonable.

There has been no allegation by petitioner nor any proof offered that the respective fees which were paid to respondent and to [D] were not in proportion to the services each performed and responsibility assumed. Therefore, your hearing committee has no evidence upon which to base a finding that the fees paid to each were unreasonable in view of the services rendered.

The main thrust of petitioner's position with regard to D.R. 2-107 is that (1) the client was not made aware as to the extent to which [D] would be responsible for the representation of the estate and (2) was not told that [D] would be receiving compensation and (3) that respondent caused moneys to be paid to [D] as a fee prior to the time that [D] had performed any substantial service for the estate. Your committee believes that the entire matter concerning the disclosure and explanation to the client concerning [D] and the premature payment of legal fees to [D] was handled in a very unprofessional manner. However, the testimony was conflicting as to what explanation was given to the executor regarding the involvement of [D]. It was admitted that the executor met [D] in the beginning and was advised that [D] would be in some way involved in the administration of the estate. The executor did testify that he was not aware that [D] would receive any compensation. However, respondent and [D] both testified that the executor was advised that [D] would be receiving compensation. [D's] name did appear on the estate documents that were prepared for filing showing him as having received money for accounting fees although the amounts were incorrectly stated. Testimony indicated that the first complaints that were made concerning any payments being made to [D] came from other heirs of the estate and not from the executor. Your hearing committee believes, therefore, that the evidence was insufficient to permit a finding that respondent divided *his* fees with another in that at all times the payments to [D] were made to him directly and were so identified. The evidence is also insufficient to satisfy the burden of proof that the employment of [D] did not have the consent of the executor or that compensation in

some amount would be paid to [D]. Therefore, your hearing committee feels obligated to find that there was no violation of D.R. 2-107 proved by petitioner. In view of the foregoing it is not felt that the fact that payment was made to [D] prior to the time that he actually rendered any services to the estate can be made the basis of a finding that D.R. 2-107 was violated.

The third charge which is in dispute concerns D.R. 9-102(A) concerning the preservation of the identity of funds and property of a client in an identifiable account. This charge is based upon the re-deposit of the estate funds from the [F] Federal Savings and Loan account by [D] into an escrow account which he alone maintained and in which there was deposited the funds of at least one other estate being handled by respondent and through which went certain funds received by [D] concerning personal business matters of [D] and out of which payments were made by [D] on personal business matters. Also, during the time that [D] kept the funds of the estate in the escrow account there were times when the total amounts on deposit fell below that necessary to satisfy the obligations to the clients. Although it would appear that initially respondent was not aware that [D] had withdrawn the funds from [F] Federal and placed them in his own account, it is clear that at some later date respondent was aware that [D] was holding the funds in the so-called escrow account. Respondent also knew, at some point, that funds belonging to the [G] estate which he also represented were being held by [D] in the same escrow account. It is clear that even after he became aware of the facts respondent did not request that [D] transfer the funds to the separate estate account, nor did respondent request any kind of an accounting or in any way

monitor the way in which the funds of either the [A] or [G] estate were being handled. Even if it is assumed that [D] had been properly retained in the first place, respondent could not delegate his responsibility to the estate in such a way to insulate him from responsibility for the acts of [D]. It is not denied that from November 13, 1975, until the time that the petition was filed, the bulk of the estate assets were held in a bank account where they were improperly commingled, that the account bore no identification that the [A] funds were on deposit and that the funds were being used in a manner which is impermissible under D.R. 9-102. In view of the foregoing, your hearing committee believes that respondent's conduct as it related to the deposit of estate funds in the [D] escrow account was in violation of D.R. 9-102.

## CONCLUSIONS OF LAW

1. Your hearing committee finds that respondent did not violate D.R. 1-102 (A)(4) in that there was no evidence introduced that respondent had engaged in any conduct involving dishonesty, fraud, deceit, or misrepresentation. That respondent acted negligently throughout the entire administration of the estate is clear and admitted but even gross negligence cannot be equated with the intentional conduct covered by this rule.

2. It is the decision of your hearing committee that petitioner did not satisfy the burden of proof that respondent had acted in violation of D.R. 2-107(A). It is respondent's position that he did not divide any fee but that [D] was hired with full knowledge of the executor of the estate and was paid separately and directly by the estate for accounting work. The testimony of [B], the executor,

was insufficient to satisfy petitioner's burden of proof that there was a violation of D.R. 2-107(A).

3. Respondent admits that his conduct was in violation of D.R. 6-101(A)(3) and your hearing committee so finds.

4. Your hearing committee finds that respondent did violate Rule D.R. 9-102(A) in that he permitted [D] to become a signator of the funds deposited in the [F] Federal Savings and Loan Association without the knowledge and consent of the executor, and permitted [D] to withdraw said funds and to deposit them into a separate escrow account wherein [D] was the only authorized signator and that said funds were then commingled with the funds of another estate and with personal funds of [D] and that there was no indication whatsoever on the escrow account that it contained funds of [A] estate. The evidence does not support a finding that respondent knew [D] used funds from the account for personal reasons or that the total funds on deposit were, at times, less than required to meet client obligations.

5. Respondent admits that he violated D.R. 9-102(B)(3) in failing to provide the personal representative or the heirs with a full and proper account of his handling of the funds belonging to the [A] estate.

## RECOMMENDED DISPOSITION OF THE CASE

The conduct of respondent in his representation of the estate of [A] has been adjudged to be or admitted to be in violation of D.R. 6-101(A)(3), 9-102(A), 9-102(B)(3). Your hearing committee has taken note in arriving at its recommended discipline that all of the violations were the result of negligence on the part of respondent and that there was never any

conversion of funds by respondent belonging to the estate nor does it appear that any of respondent's conduct was intended to result in a financial gain to respondent. Also the record would indicate this is the first disciplinary proceeding involving respondent.

Therefore, it is the recommendation of the hearing committee 4.01 that respondent be given a private reprimand by the disciplinary board without probation pursuant of Pa.R.D.E. 204(5).

## ORDER OF THE DISCIPLINARY BOARD

UNKOVIC, *Chairman*—And now, November 3, 1978, the report and recommendation of hearing committee [   ] dated August 7, 1978, has been considered, and it is ordered and decreed, that the said [respondent] of [   ] county, be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board; and further that respondent report to the board at the time of the private reprimand concerning his current physical and mental condition and his assurance that there are no further matters of which he is aware, where he has neglected, to his clients' prejudice, matters entrusted to him.